## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

Kevin Rowley,

                    Plaintiff,                 Case No. 21-12127

                                              District Judge Victoria A. Roberts

v.                                       Magistrate Judge Jonathan J.C. Grey


Kilolo Kijakazi,

Acting Commissioner of Social Security

                    Defendant.

_____/


## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Kevin Rowley brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to challenge a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits. Both parties filed summary judgment motions (ECF Nos. 11, 14) which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Rowley filed a reply in support of his motion. (ECF No. 15.) For the reasons set forth below, it is **RECOMMENDED** that Rowley's motion (ECF No. 11) be **DENIED**, that the Commissioner's motion (ECF No. 14) be **GRANTED**, and that the Commissioner's decision be **AFFIRMED.**

## I.    Background

### A. Procedural History

On September 3, 2019, Rowley filed an application for Disability Insurance Benefits. (Tr. 14.[1]) Rowley was 44 years old at the time of the alleged onset date, January 7, 2019. (Tr. 22.) He has a high school education and worked as a cleaner, fast food worker, and an assistant manager in food service. (*Id*.) Rowley alleged disability due to osteoarthritis[2] in his hips, back pain, pulmonary embolism, and hernias. (Tr. 57.)

The Social Security Administration denied his application on November 20, 2019. (Tr. 83.) Rowley timely requested an administrative hearing which was held telephonically on September 3, 2020 before Administrative Law Judge ("ALJ") Ramona Fernandez. (*Id*.) Rowley, represented by counsel, and Vocational Expert ("VE") Scott Silver testified. (Tr. 14.) On September 14, 2020, ALJ Fernandez found Rowley not disabled. (Tr. 11.) Rowley requested review of ALJ Fernandez's decision from the Appeals Council on October 15, 2020. (Tr. 146-148.) The Appeals Council denied Rowley's request for review on July 13, 2021, which made ALJ Fernandez's decision final. (Tr. 1-3); *Wilson v. Comm'r of Soc. Sec.*,

---

[1] The administrative record appears on the docket at ECF No. 9. All references to it are identified as "Tr."

[2] Osteoarthritis occurs when protective cartilage that cushions the end of the bone begins to deteriorate. Osteoarthritis causes significant pain in the affected area. https://www.mayoclinic.org/diseases-conditions/osteoarthritis/symptoms-causes/syc-20351925

2

378 F.3d 541, 543-44 (6th Cir. 2004). Rowley filed a timely claim for judicial review of the Commissioner's final decision on September 11, 2021. (ECF No. 1.)

## B. The Disability Framework

Under the Social Security Act, benefits are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past

relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

### C. ALJ Fernandez's Application of the Disability Framework

ALJ Fernandez applied the five-step disability analysis. At step one, ALJ Fernandez found that Rowley has not engaged in substantial work activity since the alleged onset date of January 7, 2020. (Tr. 16.) At step two, ALJ Fernandez found that Rowley had the following severe impairments for a continued period of at least 12 months: osteoarthritis/degenerative joint disease in both hips; status-post hernia surgery; and obesity. (*Id.*) ALJ Fernandez also found that Rowley had a non-severe impairment of hypertension. (Tr.17.) At step three, ALJ Fernandez

4

found that Rowley's impairments, considered individually or combined, do not meet or medically equal the severity of one of the listed impairments. (*Id.*)

ALJ Fernandez then evaluated Rowley's RFC, finding that Rowley has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [H]e can sit for 6 of 8 hours; stand and/or walk 4 of 8 hours; frequently balance; occasionally climb, stoop, kneel, or crouch; never crawl; never use ladders, ropes, of scaffolds; must avoid concentrated exposure to extreme temperatures, wetness, humidity and fumes; and must avoid dangerous, moving machinery and unprotected heights, but is capable of avoiding ordinary workplace hazards.

(Tr. 17-21.) At step four, ALJ Fernandez found that Rowley was unable to perform his past relevant work. (Tr. 22.) At step five, ALJ Fernandez found that consistent with his limitations, Rowley can perform light work. (Tr. 22-23.)  Considering Rowley's RFC and the VE testimony, ALJ Fernandez found that Rowley could perform jobs, such as assembler, collator, and router, which exist in the national economy. (Tr. 22-23.) Accordingly, ALJ Fernandez found no disability existed and denied Rowley's request for benefits. (Tr. 24.)

## II.    Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the

5

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

## B. Analysis

Rowley argues that ALJ Fernandez's denial was not supported by substantial evidence because: (1) ALJ Fernandez failed to create an accurate RFC, and (2) she improperly evaluated the medical opinions. (ECF No. 11, PageID.1093.) Rowley contends that ALJ Fernandez did not consider all his limitations, and if ALJ Fernandez considered all the limitations, she would have found that Rowley could not perform light work. (*Id.*, PageID.1094.)[3] In response, the Commissioner argues that Rowley failed to meet his burden in establishing that greater limitations were warranted in the RFC assessment. The undersigned agrees with the Commissioner.

### 1. ALJ Fernandez's RFC Assessment

An RFC "is the most a [plaintiff] can still do despite the physical and mental

---

[3] The regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(a), 404.1567(b).

limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2). Rowley bears the burden to demonstrate that he has a more restrictive RFC than that found by ALJ Fernandez. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999); *see also Jones*, 336 F.3d at 474.

Rowley argues that ALJ Fernandez failed to consider documented limitations caused by his degenerative joint disease of both hips, hip and back pain, and hernia. (ECF No. 11, PageID.1094.) "The ALJ's finding that Plaintiff is capable of sitting for 6-hours of an 8-hour day and standing/walking for 4 of 8 hours, especially with no additional limitations for sit/stand option or being off task as well as no limitations in lifting/carrying or pushing/pulling, cannot be said to be supported by substantial evidence." (*Id*., PageID.1096.)

Rowley points to the following evidence to support his claim that the RFC should have been more restrictive:

1. Rowley's testimony about his chronic hip and low back pain, and hernia issues. (Tr. 30-47.)

2. An x-ray of the right hip dated August 14, 2019 revealed severe arthritic disease and diffuse, severe narrowing of the right hip joint with osteophytes on both sides of the joint with remodeling of the femoral head, as well as similar arthritic changes in the left hip. (*Id*.)

3.  On October 7, 2019, an x-ray of Rowley's left hip revealed the appearance of the femoral head and acetabular. (*Id.*)

4.  During a physical exam in October and November of 2019, Rowley's hip range of motion was limited in all planes with significant pain with FADIR and FABER maneuvers, limited internal rotation, and a positive Stinchfield test. (*Id.*)

During the hearing, Rowley testified that he stopped working in January 2019 when he developed a blood clot in his leg, pulmonary embolism in both lungs, and hip pain. (Tr. 35.) He testified that although he has not had a recurrence of blood clots since 2018, he continued to experience hip pain, low back pain, and hernias, the basis of his disability claim. (Tr. 35-36.) Rowley testified that his treating doctors told him that both of his hips need to be replaced but he needs to lose weight first. (*Id.*) Rowley has a BMI of approximately 46 and is morbidly obese. (Tr. 40.); SSR 02–1P, 2002 WL 34686281, at *2 (morbid obesity, also known as extreme obesity, includes BMIs greater than or equal to 40). Rowley also testified that he had hernia surgery in February 2020 but the hernia has returned and he needs another surgery. (*Id.*) According to him, doctors suggested that Rowley lose weight prior to another hernia surgery. (*Id.*) Rowley contends that he cannot exercise due to his limited mobility from his hip pain. (Tr. 39.) Finally, Rowley testified that he cannot walk more than one block, can stand for only 15/20

9

minutes, can sit for approximately an hour, and cannot lift more than 10 pounds. (Tr. 41-42.)

In addition to Rowley's testimony, the record contains the following relevant objective evidence.

In 2019, Rowley reported to his primary care physician, Dr. Jennifer Foess-Halaas, that he was experiencing right hip pain, shortness of breath, and a hernia. (Tr. 257.) An x-ray taken of Rowley's right hip on August 14, 2019 revealed that there was a diffuse severe narrowing of his right hip joint with osteophytes on both sides of the joint and there was mild remodeling of the femoral head.[4] (Tr. 642.) The x-ray of his left hip revealed similar arthritic changes but to a slightly lesser degree than the right hip. (*Id*.) A CAT scan of Rowley's back on August 14, 2019 revealed that his lumbar spine was normal. (Tr. 643.) In October 2019, another x-ray of Rowley's left hip revealed an appearance of the femoral head and acetabula which raised questions of mixed type femoral acetabular impingement.[5] (Tr. 34.) Later that month, Rowley received a steroid injection in his right hip to reduce pain. (Tr. 560.) At a follow up visit with Dr. Arveschoug approximately a month after receiving the injection, Rowley reported that the injection significantly helped

---

[4] "When joint space narrowing occurs, the cartilage no longer keeps the bones a normal distance apart. This can be painful as the bones rub or put too much pressure on each other." https://www.healthline.com/health/joint-space-narrowing
[5] Femoral acetabular impingement results in an irregular growth of the hip bones and the bones rubbing together which can cause pain. https://orthoinfo.aaos.org/en/diseases--conditions/femoroacetabular-impingement/.

his pain, especially for the first few weeks. (Tr. 558.) Rowley received an additional steroid injection in each hip in February 2020. (Tr. 632-633.)

Also during the November 25, 2019 visit, Rowley reported significant pain with FADIR and FABER maneuvers[6] on each hip. (*Id*.) Testing of Rowley's movements revealed a positive Stinchfield test (or resisted hip flexion test).[7]

The Commissioner asserts that Rowley's RFC, as determined by ALJ Fernandez, specifically accounted for all his impairments, including limitations caused by Rowley's hip pain and hernia. (ECF No. 14, PageID.1116.)

After thoroughly reviewing the record, ALJ Fernandez found that Rowley's combined physical symptomatology, including hip pain from osteoarthritis, groin pain from his recurrent hernia, and any exacerbation of pain symptoms caused by his obese physique limits him to light work with limitations. (Tr. 20-21.) When evaluating the intensity, persistence, and limiting effects of Rowley's symptoms, ALJ Fernandez found that Rowley's subjective complaints of pain were inconsistent with the objective medical evidence in the record. (Tr. 19.)

An ALJ is not required to accept a claimant's subjective complaints. *Jones*,

---

[6] FADIR (Flexion, Adduction, Internal, and Rotation and FABER (Flexion, Abduction, and External Rotation) maneuvers assist in the diagnosis of pathologies at the hip, lumbar and sacroiliac region. https://www.physio-pedia.com/FABER_Test
[7] During the Stinchfield test, "the patient is asked to lift his leg, without bending his knee, to about 30-45 degrees. A positive Stinchfield test demonstrates increasing intra-articular pressure that causes pain in the distribution of the hip's sensory innervation." https://orthofixar.com/special-test/stinchfield-test/.

336 F.3d at 475. "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012) (citation omitted). Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze the consistency of the claimant's statements with objective medical and other evidence in the claimant's record. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(a).

To evaluate a claimant's subjective symptoms, ALJs must follow a two-step process. *Id.* The ALJ must first confirm whether there is objective medical evidence of the underlying condition from an acceptable medical source. *Id.* If there is, the ALJ examines the intensity and persistence of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* In doing so, the ALJ must consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any measures used to relieve symptoms; and (7) other factors concerning a claimant's functional limitations due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

In assessing Rowley's subjective complaints, ALJ Fernandez discussed

Rowley's hearing testimony, a functional status questionnaire dated February 27, 2020, Rowley's wife's Third-Party Function Report dated January 2020, and numerous medical records, including hospital records, progress notes, and imaging results. (Tr. 17–21.) ALJ Fernandez found that Rowley has impairments that could reasonably cause the alleged symptoms. (Tr. 19.) However, for the second step, ALJ Fernandez concluded that the objective medical evidence did not support Rowley's allegations regarding the severity of his symptoms or limitations. (*Id.*)

ALJ Fernandez found that Rowley's symptoms were not as severe or limiting as alleged based on the following:

(1) Rowley's steroid injection in his right hip in October 2019 significantly reduced his pain, especially for the first few weeks. (Tr. 19, 558.) Rowley reported that he was still in residual pain but felt much better than he did before the shot. (*Id.*) ALJ Fernandez found that the conservative treatment Rowley received sufficiently managed his pain. (Tr. 21.) (2) Dr. Foess-Halaas performed an x-ray of Rowley's lumbar spine which came back normal. (*Id.*) Additionally, Dr. Foess-Halaas noted normal pulmonary/chest, abdominal, musculoskeletal, and neurological findings. (Tr.) (3) In January 2020, general surgeon Dr. Edward Mavashev's initial evaluation of Rowley's left inguinal hernia found that Rowley was in no distress, had normal back findings, no extremity edema[8], and normal

---

[8] Edema is swelling caused by a collection of fluid in the spaces that surround the body' tissues

strength, sensation, and reflexes throughout. (Tr. 20) During a follow-up evaluation in June 2020, Dr. Mavashev noted the same findings as his initial evaluation. (*Id.*) (4) There is nothing in the record that indicates that any of Rowley's treating physicians placed him on long term or permanent functional restrictions since his alleged onset date. (Tr. 21.) (5) A functional status questionnaire from February 2020 notes that Rowley did not have difficulty walking, climbing stairs, getting in and out of bed, feeding, dressing, bathing, or grooming/toileting. (Tr. 21.) (6) Finally, ALJ Fernandez found the state agency physicians' opinions persuasive.

An ALJ may rely on a claimant's conservative treatment plan in assessing the credibility of his subjective complaints. *Bentley v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 434, 435-436 (6th Cir. 2001). A treatment plan may undermine a claimant's subjective complaints of pain if conservative treatment is effectively managing the pain. *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1001-1002 (6th Cir. 2011); *see also Myatt v. Comm'r of Soc. Sec.*, 251 Fed. Appx. 332, 335 (6th Cir. 2007).

In October 2019, orthopedic surgeon, Dr. Arveschoug, treated Rowley with a steroid injection in his right hip for pain management. At a follow-up visit with

---

and organs. https://www.mayoclinic.org/diseases-conditions/edema/diagnosis-treatment/drc-20366532

Dr. Arveschoug in November 2019, Rowley reported that the steroid injection helped his pain significantly, especially for the first few weeks. (Tr. 558.) Rowley reported that he still had some residual pain, but felt much better than before the injections. (*Id.*) Dr. Arveschoug recommended that Rowley repeat the steroid injections in three months. In February 2020, three months later, Rowley received an additional steroid injection in each hip. (Tr. 32-33.)

Steroid injections are a form of conservative treatment. *Engle v. Saul*, No. 20-10403, 2021 WL 850565, at *8 (E.D. Mich. Feb. 16, 2021) (defining conservative treatment as an approach to treating pain utilizing non-surgical treatment options, such as physical therapy, medication and injections). Receipt of effective conservative treatment, specifically a steroid injection, may be inconsistent with allegations of disabling pain. *Carter v. Comm'r of Soc. Sec.*, No. 12-14529, 2014 WL 3400710, at *5 (E.D. Mich. July 10, 2014) (finding that the plaintiff's "conservative treatment of his pain with prescription medication and one spinal steroid injection" was inconsistent with his allegations of disabling pain); *see also Schlacht v. Comm'r of Soc. Sec.*, No. 18-12125, 2019 WL 7586531, at *13 (E.D. Mich. Aug 21, 2019) (claimant's receipt of an injection does not bolster her claim that she is disabled).

Rowley contends that though he received injections, the pain relief was temporary. (ECF No. 11, PageID.1099.) ALJ Fernandez acknowledged that the

relief was only temporary. (Tr. 21.) As discussed below, Rowley's conservative treatment was not ALJ Fernandez's sole basis for her finding. ALF Fernandez was free to consider the entire record in her credibility analysis. *Jones*, 336 F.3d at 475.

In addition to complaints of hip pain, Rowley reported to his primary care physician, Dr. Foess-Halaas, that he was experiencing lower back pain. (Tr. 288.) ALJ Fernandez correctly noted that an x-ray of Rowley's lumbar spine was normal. (Tr. 19, 288.) Rowley does not point to any evidence in the record to substantiate his back pain.

Furthermore, ALJ Fernandez stated that "[p]hysical exam findings also reflect [Rowley] is generally in no acute distress with no deficits in muscle/motor strength or evidence of gait abnormalities." (Tr. 21). During the October 2019 evaluation with Dr. Arveschoug, he found that Rowley was in no acute distress with no gross deformity or swelling of his bilateral lower extremities. (Tr. 518.) At the follow-up visit with Dr. Arveschoug in November 2019, it was noted again that Rowley was in no acute distress. (Tr. 558.) During a January 3, 2020 visit with Dr. Faisal Musa, Rowley's physical exam findings were normal; he did not have a gait problem, was not in acute distress, his extremities were normal, and there were no abnormalities. (Tr. 606.)

In the most recent medical reports on record, a June 4, 2020 physical examination with Rowley's primary care physician showed normal findings. (Tr.

838-839.) Later that month, during a June 2020 evaluation with Dr. Mavashev, it was noted that Rowley was in no distress with normal back related findings, no extremity edema, and normal strength, sensation, and reflexes. (Tr. 193.) In sum, ALJ Fernandez correctly noted that doctors generally found Rowley in no acute distress and had normal strength. It was proper for ALJ Fernandez to take these findings in consideration when assessing the intensity and persistence of Rowley's pain. *See Colon-Lockhart v. Comm'r of Soc. Sec.*, No. 14-14336, 2015 WL 10553206, at *9 (E.D. Mich. Dec. 29, 2015) (citing *Jones v. Commissioner of Social Sec.*, 2015 WL 5749687, *5 (W.D. Mich. Sept. 30, 2015)) (the ALJ properly discounted the treating opinion of disability because the plaintiff "retained full muscle strength, had no focal deficits and no swollen joints, was in no acute distress, and had a normal gait").

Rowley argues that the record clearly establishes that he is unable to comply with ALJ Fernandez's RFC limitations. (ECF No. 11, PageID.1100). As an example, Rowley says the record is clear that he is not capable of standing for up to an hour at one time. (*Id.*) However, Rowley does not point to any evidence or treating physician opinions that placed him on any long term or permanent functional restrictions. Rowley bears that burden. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (the claimant bears the burden of demonstrating the need for a more restrictive RFC).

In a functional report dated October 12, 2019, Rowley reported, in relevant part, that he drives, cooks sometimes, takes care of his family's pets, and goes outside daily. (Tr. 188-195.) In a more recent functional status questionnaire dated February 27, 2020, approximately five months after Rowley filed his disability claim, it was reported that Rowley had no difficulty walking, climbing stairs, getting in and out of bed, feeding, dressing, bathing, grooming, or toileting. (Tr. 820.) The ALJ is free to consider Rowley's daily activities in determining his credibility around pain. 20 C.F.R. § 404.1529(c)(3) (Mar. 27, 2017); *see Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 536 (6th Cir. 2001) (holding "subjective complaints were not credible in light of [the claimant's] ability to perform other tasks" including walking around her yard, riding a bicycle, going to church, going on vacation, cooking, vacuuming, and making beds); *Daniel Joseph O'connell v. Comm'r of Soc. Sec.*, No. 14-13690, 2015 WL 12683979, at *11-12 (E.D. Mich. Nov. 25, 2015) (the ALJ's no disability finding was substantiated by an extensive credibility analysis coupled with consideration of claimant's daily activities).

Finally, ALJ Fernandez also relied on the state agency physicians' opinions. (Tr. 21.) "Generally, an ALJ is not bound by the opinion of a non-examining

consulting physician; rather, the ALJ must 'evaluate the persuasiveness' of the medical opinion and decide how much weight to afford it." *Parr v. Comm'r of Soc. Sec.*, No. 20-cv-13173, 2021 WL 5986920, at *12 (E.D. Mich. Aug. 31, 2021); *see also* 20 C.F.R. § 404.1520c(a) (2021*); Stanley v. Comm'r of Soc. Sec.*, Case No. 20-11678, 2021 WL 3021265, at *6 (E.D. Mich. July 16, 2021). When evaluating the persuasiveness of the medical opinion, the ALJ should consider: (1) the degree to which the consultant's opinion is supported by objective medical evidence and supporting explanations and (2) the degree to which the opinion is consistent with the evidence from other medical sources. 20 C.F.R. § 404.1520c(a), (c)(1)–(2). ALJ Fernandez considered the supportability and consistency of each opinion in accordance with 20 C.F.R. § 404.1520c(a), explicitly mentioning the factors and citing the medical record. (Tr. 21.)

ALJ Fernandez appropriately relied on opinions by Dr. Helen Jones and Dr. Alyce Metoyer, state agency physicians, who both opined that Rowley was limited to exertion consistent with light work: standing/walking for only 4 hours, sitting for a total of 6 hours in an 8-hour workday, occasional lifting/carrying of 20 pounds,  occasional postural activity except no climbing ladders/ropes/scaffolds or crawling, and that he should avoid concentrated exposure to extreme cold/heat, wetness, and humidity, fumes, odors, dusts, gases, and poor ventilation, and hazards (i.e., machinery/heights). (Tr. 59-75.) ALJ Fernandez found Dr. Jones and

Dr. Metoyer's opinions persuasive because they were supported with imaging results, orthopedic exam findings, provider notes, and other medical evidence. (Tr. 21.)

In *Jerniga v. Comm'r of Soc. Sec.*, the court found that the ALJ's credibility determination was reasonable and supported by substantial evidence because the ALJ assessed plaintiff's conservative treatment, daily activities, and reviewed the relevant opinion evidence, including state agency opinions. No. 13-10454, 2014 WL 1328177, at *4 (E.D. Mar. 28, 2014). Same is true here. ALJ Fernandez's credibility determination is thorough, detailed, and amply supported by the record. Given ALJ Fernandez's discretion not to accept all limitations stated by a claimant, her determination in consideration of medical evidence lies within the "zone of choice" accorded to the fact-finder at the administrative hearing level, and it should not be disturbed. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court's "task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citation omitted).

### 2. ALJ Fernandez Properly Evaluated the Medical Opinions

Rowley also argues that ALJ Fernandez erroneously construed Dr. Foess-Halaas' August 5, 2019 medical report as a medical opinion; and erroneously found the state agency physicians' opinions persuasive. (ECF No. 11, PageID.1101-1103.) The undersigned finds both arguments unavailing.

In ALJ Fernandez's finding, she stated:

> During the claimant's visit with his PCP in August 2019, it was
> noted that the claimant's back pain along with hip pain is "function
> limiting" and likely contributing to weight gain (1F/13). To the
> extent this is considered an opinion on the claimant's physical
> functioning, it is not persuasive because it is vague.

(Tr. 21). The undersigned does not read ALJ Fernandez's finding to mean
that she construed Dr. Foess-Halaas' note as an opinion. Even if ALJ Fernandez
construed the statement as an opinion, Rowley failed to show that the error was
harmful. *Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing
that an error is harmful normally falls upon the party attacking the agency's
determination.")

Dr. Foes-Halaas' August 2019 report states that Rowley's right hip pain and
low back pain is function limiting. However, Dr. Foes-Halaas does not elaborate
on what functions are limited. In *Bruce v. Comm'r of Soc. Sec.*, the claimant's
treating physician noted that the severity of the claimant's pain was causing her
difficulty in performing her activities of daily living. No 10-10426, 2010 WL
5932326, at *8 (E.D. Mich. Dec. 9, 2010), *report and recommendation adopted*,
2011 WL 833792 (E.D. Mich. Mar. 4, 2011). Similar to the case here, *Bruce* did
not interpret the physician's statement as an opinion. *Id*. The court also stated that
even if it did consider it to be an opinion, the provider's statement did not specify
any restrictions and was "too vague to lend any insight into the doctor's opinion as

to Plaintiff's specific abilities." *Id*. ALJ Fernandez did not erroneously construe

Dr. Foes- Halaas' statement as an opinion, and if she did construe it as such,

Rowley failed to satisfy his burden in establishing that it was harmful error as Dr.

Foess-Halaas' "functional limiting" statement was too vague.

Rowley argues that ALJ Fernandez improperly found the state agency

physicians' opinions persuasive because they were not treating or examining

physicians and did not review the entire record that shows continued, uncontrolled

symptoms. (ECF No. 11, PageID.1102.)

"An ALJ is permitted to rely on state agency physicians' opinions to the

same extent as [she] may rely on opinions from other sources." *Reeves v. Comm'r*

*of Soc. Sec.*, 618 F. Appx. 267, 274 (6th Cir. 2015). "This is especially so when

there is no other opinion evidence in the record." *Sandersfield v. Comm'r of Soc.*

*Sec.*, No. 20-10740, 2021 WL 4204342, at *6 (E.D. Mich. Apr. 9, 2021) (citing

*Kepke v. Comm'r of Soc. Sec.*, 636 F. Appx. 625, 632 (6th Cir. 2016)).

Additionally, an ALJ may rely on a state agency medical opinion even if the state

physician did not have access to the entire record. *Glasgow v. Comm'r of Soc. Sec.*,

690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*,

343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state

agency physician's opinion that is not based on all of the medical evidence in the

record if the ALJ considers any evidence that the physician did not consider).

The state agency physicians reviewed the record before them and acknowledged that Rowley's objective testing showed that he had severe degenerative joint disease. However, the physicians found that Rowley's statements regarding the intensity of the symptoms and their impact on his functioning were inconsistent with the record because he could drive, go out alone with no problems, and was able to walk one block. (Tr. 58.) Rowley stated in multiple functional reports that he was able to perform these activities. ALJ Fernandez properly found that the state agency physicians' opinions were consistent and supported by the record. This is true even if they were not treating physicians or did not have access to the entire record. The ALJ's opinion denying disability is supported by substantial evidence.

## III.   Recommendation

For the preceding reasons, the undersigned **RECOMMENDS** that Rowley's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**.

**SO ORDERED.**

Dated: February 27, 2023                    s/**Jonathan J.C. Grey**
                                            JONATHAN J.C. GREY
                                            United States Magistrate Judge

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2023.

<u>s/</u> **J. Owens**
**Julie Owens**